22298.   BETTS v. BROWN et al.

ARGUED JANUARY 15, 1964—DECIDED MARCH 18, 1964—
REHEARING DENIED APRIL 2, 1964.

*W. S. Allen, H. Briscoe Black,* for plaintiff in error.

*Willis G. Haugen, Sanders, Mottola & Haugen, George C. Kennedy,* contra.

GRICE, Justice.  The issue here is whether payment of a security deed indebtedness with the proceeds of credit life insurance inured to the insured's widow in her claim for reimbursement against a third party who had agreed to assume the indebtedness.

This review results from rulings made in an interpleader action filed in the Superior Court of Meriwether County by the Luthersville Banking Company against James A. Brown and Mrs. Louelle Garrett Betts for adjudication of rights arising when the proceeds of credit life insurance on the life of Mr. Betts were applied to satisfy an indebtedness to the bank.  The trial court overruled Brown's general demurrer to the bank's petition and ordered interpleader.  Thereupon, Brown and Mrs. Betts each asserted claims as to what disposition the bank should make of the promissory note and security deed, and each also sought injunctive relief against further litigation by the other as to the matters involved.

The claim of Mrs. Betts alleged substantially the facts which follow.

She is the widow of L. Porter Betts, hereinafter referred to as Betts, whose entire estate has been set aside to her as year's support.

In 1961 Betts delivered to the bank his note for $8,262, to-

gether with a deed to secure debt conveying certain land as security for the note.

In January of 1962, Betts delivered to Brown his warranty deed conveying a portion of the same land. This deed was expressly made "subject to" the deed to secure debt to the bank and stated that Brown "assumes and agrees to pay the indebtedness secured by said deed." Brown went into possession of the land under this deed and so remains. Between January and October of 1962, Brown made various and substantial payments on that indebtedness.

In October of 1962, the indebtedness above referred to became due and payable but Brown failed and refused to pay it.

On November 17, 1962, Brown and Betts, signing as comakers, executed to the bank their joint and several note for $6,241.26 "in renewal and in lieu of" Betts' original note.

On that same day the bank procured the issuance of a credit life insurance policy upon Betts' life in the amount of $3,800 for a term of twelve months on a non-reducing term basis, naming the bank as beneficiary "as its interest may appear, and the balance, if any, to any relative by blood or connection by marriage of the Borrower [Betts], or to the estate of the Borrower." Also, on that same day the bank and Betts procured another credit life insurance policy, with a different company, upon Betts' life in the amount of $2,400 for a term of twelve months on a reducing term basis. This policy insured Betts against death and accidental loss of an eye, hand or foot, and named the bank as beneficiary "as its interest may appear and the balance of the proceeds, if any, is payable to the estate of the insured [Betts]." It is not alleged who paid or agreed to pay the premiums on these policies.

On December 17, 1962, the first payment on the renewal note became due but Brown failed to pay it.

On December 19, 1962, Betts died.

On January 17, 1963, the second payment on such renewal note fell due but again Brown failed to pay it, rendering the note two payments in arrears.

On January 18, 1963, the bank received the principal sums of $3,800 and $2,400 from the two insurance companies as pro-

ceeds of the policies above referred to. The renewal note was still two payments in default, and the bank elected to declare the entire indebtedness thereon immediately due and payable. Accordingly, it applied all such insurance proceeds against its interest in and to the debt represented by that note, the amount so applied being sufficient to satisfy its interest. The bank retains such note and security deed, and holds them subject to adjudication of their title by the court.

Mrs. Betts' prayers were (1) that Brown's claim and prayers be denied; (2) that all right, title and ownership interest in and to the renewal note and the security deed be adjudicated in her; (3) that the bank assign and deliver those instruments to her; (4) that she have judgment against Brown for the principal amount of the note, $6,241.26, with interest and costs; (5) that Brown be permanently enjoined from suing her, or any other person, in relation to or asserting any right or title as to the note and security deed; and (6) general relief.

Brown's claim alleged facts substantially the same as Mrs. Betts'. However, he did not characterize the second note as having been given in lieu of or in renewal of the original one executed by Betts, but alleged that he and Betts, as comakers, executed and delivered to the bank their promissory note in a stated amount. Also, he asserted that *neither* he nor Betts made any payment on the note to the bank.

His prayers were: (1) that Mrs. Betts' claim and prayers be denied; (2) that the bank mark the note "paid" and deliver it to either Mrs. Betts or him; (3) that the note be adjudicated paid and satisfied and be extinguished; (4) that the bank mark the security deed "paid" and deliver it to either Mrs. Betts or him, and that it be canceled on the deed records; (5) that the security deed be adjudicated paid, satisfied and canceled; (6) that Mrs. Betts be permanently enjoined from suing him as to the note or the debt represented thereby; and (7) general relief.

Each of the claimants demurred generally to the other's claim and also moved for summary judgment. The trial court overruled Mrs. Betts' demurrer to Brown's claim and her motion for summary judgment. It sustained Brown's general demurrer to Mrs. Betts' claim, thereby dismissing it, and granted Brown's

motion for summary judgment. Mrs. Betts assigns error upon those rulings.

■ The controlling issue in this controversy is whether payment of the indebtedness to the bank with the proceeds of insurance on Betts' life was, in legal effect, payment by Betts. Once this issue is determined, the others fall naturally into place.

It is contended that credit life insurance is wholly for the benefit of the creditor, that the insured debtor has no interest in the policy or its proceeds, and therefore that payment with such proceeds could not amount to payment by the insured.

For reasons hereinafter discussed, we must reject that contention. Our conclusion is that, under the circumstances here, payment with the proceeds of credit life insurance policies is payment by the insured.

First, our Georgia Insurance Code of 1960 (Ga. L. 1960, p. 289) evidences an intent that the insured debtor have an interest in this type of insurance and makes various provisions for the protection of that interest. It defines credit life insurance as "insurance *on the life of a debtor* pursuant to or in connection with a specific loan or other credit transaction." (Emphasis ours.) Ga. L. 1960, pp. 289, 743; *Code Ann.* § 56-3302 (1). This provision makes it clear that it is the life of the debtor, not the debt itself, which is insured.

That statute also requires that credit life insurance be evidenced by either an individual policy or a group certificate of insurance, as the case may be, and that such evidence be delivered to the insured debtor. Ga. L. 1960, pp. 289, 745; *Code Ann.* § 56-3306 (1). Further, such policy or certificate must contain the name and address of the insurer, the identity of the insured, the amount of premium, a description of the coverage, and "wherever the amount of insurance may exceed the unpaid indebtedness shall state that any such excess shall be payable to a beneficiary, other than the creditor, named by the debtor or to his estate." Ga. L. 1960, pp. 289, 745; *Code Ann.* § 56-3306 (2). As additional protection for the insured debtor, the Code provides that the insurer shall not charge premiums in excess of the approved rate (Ga. L. 1960, pp. 289, 748; *Code Ann.* § 56-3308 (1)), and that the amount collected by

■

the creditor from the insured debtor be consistent with the premium rate charged by the insurer. Ga. L. 1960, pp. 289, 748; Code Ann. § 56-3308(2). All of these provisions recognize and seek to protect the interest of the insured debtor in the credit life insurance.

Also, that same statute recognizes that it is the *debtor* who *furnishes* the insurance in credit transactions. It gives him the option of furnishing the required amount of insurance through existing policies already owned by him or of procuring the required coverage through an insurer of his own choosing, instead of allowing his creditor to procure it. Ga. L. 1960, pp. 289, 749; Code Ann. § 56-3311.

Where the statute gives the debtor such option as to his insurance arrangement, the effect of payment with the proceeds of the insurance should be the same regardless of which of the authorized methods he chooses to employ. If the payment were with the proceeds of credit life insurance the debtor himself procured, independently of his creditor, or with the proceeds of a pre-existing policy of insurance owned by him and assigned to his creditor, there would be no question but what the payment was by the insured. We see nothing which would require a different result here where the debtor chose a third authorized arrangement.

Furthermore, who other than Betts could be regarded as having made the payment here? There are only three possibilities, Brown, the bank and the insurance companies.

Brown is quickly eliminated. No allegation appears as to his having participated in this insurance transaction. He is not mentioned in the policies. His only involvement is in seeking to benefit from them insofar as his obligation to the creditor is concerned. We regard him as a complete stranger to the insurance.

The bank can not be regarded as having made the payment. It had some part in procuring the insurance, but only because the debtor allowed it rather than furnishing insurance by one of the other methods which, under our statute, he could have employed. So far as is shown, the bank's only interest in the insurance was as beneficiary to the extent of the amount owed it by the insured.

The insurance companies, of course, actually disbursed the money to the creditor. However, they acted, not as volunteers but, in compliance with their obligation, in consideration of premiums paid them, to provide for the risk of Betts' death. Although, in accordance with arrangements made previously by Betts and the bank, the two insurance companies acted as the conduit for the payment of the indebtedness, to us it is inescapable that the payment was by Betts. He literally paid with his life.

Insofar as we have found, the instant case is one of first impression. However, it has been held that payment by a liability insurer to a party damaged by its insured and another is payment by the insured such as will entitle the insured to contribution from the joint tortfeasor. See Wold v. Grozalsky, 277 N.Y. 364 (14 NE2d 437); Carter v. E.T. & W.N.C. Transp. Co., 35 Tenn. App. 196 (243 SW2d 505).

What is ruled here is not contrary to *Baldwin v. Atlanta Joint Stock Land Bank,* 189 Ga. 607 (7 SE2d 178). There, a debtor assigned an existing life insurance policy to his security deed creditor as further security. It was held that upon his death and payment of the insurance proceeds to the creditor the debt was extinguished and there could be no assignment of the security deed to the beneficiaries named in the policy. But, in contrast to the situation here, no right to subrogation against an assuming grantee was sought to be asserted.

The credit life insurance contract dealt with in *Murray v. Life Ins. Co. of Ga.,* 107 Ga. App. 545 (130 SE2d 767), was entered into prior to the effective date of the Georgia Insurance Code, Ga. L. 1960, supra. Hence, what was there held as to the insured's lack of interest in that contract and consequent inability to sue the insurer for breach thereof was not with the aid of the above mentioned Insurance Code provisions, which recognize the interest of the insured in the credit life insurance contract.

■ Having determined that it was Betts who paid the indebtedness, we find that Mrs. Betts' claim alleges a cause of action.

(a) All of Betts' estate having been set aside to her as year's support, Mrs. Betts succeeded to his rights insofar as this transaction is concerned. See *Code* §§ 3-407, 85-1802.

(b)   By the January 18, 1962, warranty deed in which Brown assumed Betts' indebtedness to the bank, as between the two of them, Brown became principal and Betts surety on that indebtedness.  See *Stapler v. Anderson*, 177 Ga. 434, 436 (170 SE 498); *National Mortgage Corp. v. Bullard*, 178 Ga. 451, 454 (173 SE 401).

(c)   So far as is shown, that relationship was not changed by their subsequent execution, as comakers, of a note to the bank which Mrs. Betts alleges was given "in renewal and in lieu of" the original one executed by Betts alone and assumed by Brown.   With nothing else alleged as to the intentions of the parties as to the effect of their joint note, and in view of Brown's prior assumption of the indebtedness thus renewed, we deem the following to be applicable: "The rights and liabilities of co-makers *as between or among themselves* depend upon the terms of their contract, which may be proved by parol evidence.   .   . But the presumption that two or more promisors of a note are equally responsible for its ultimate payment may be rebutted by showing that one signed for the accommodation and as surety for the other."   (Emphasis ours.)   11 Am.Jur.2d 655-656, Bills and Notes, § 588.   Also, "Makers may occupy the relation of principal and surety *between themselves,* but nevertheless be all principals as to the payee or the holder   .   .   ." and "The rights and liabilities of makers, *as between themselves,* depend on the contract between them and the relation they sustain to each other and to the transaction.   One maker may show that he was in fact a surety for another."   (Emphasis ours.)   10 CJS 464-466, Bills and Notes, § 37 (e), (f).

Accordingly, we regard Mrs. Betts' claim as alleging a continuance of the principal and surety relationship, as between Betts and Brown, by virtue of the joint note being a "renewal" of the original indebtedness which Brown assumed.

(d)   As to the rights of a surety who has paid the debt of his principal, the Code provides: "Payment by a surety   .   .   .   of a debt past due shall entitle him to proceed immediately against his principal for the sum paid   .   .   ." (*Code* § 103-302); "A surety who has paid the debt of his principal shall be subrogated, both at law and in equity, to all the rights of the creditor   .   .   ."

(*Code* § 103-501) ; and "A surety who has paid the debt of his principal shall be entitled, also to be substituted in place of the creditor as to all securities held by him for the payment of the debt." *Code* § 103-502.

Therefore, her husband having, as surety, paid the indebtedness here, Mrs. Betts' allegations are sufficient to show a cause of action for the relief she seeks, to wit, to have all right, title, ownership, and interest in such note and security deed adjudicated in her; to have the bank assign and deliver those instruments to her; to have a money judgment against Brown on the note, to enjoin Brown from suing on or asserting any right or title to such instruments, and to have general relief.

This brings about an equitable result, in keeping with the purpose and principles of subrogation. What Betts and Brown originally agreed upon takes place. Brown has his portion of the land in return for paying the balance of the agreed consideration, the indebtedness which he assumed. Betts (as succeeded by Mrs. Betts) received what he bargained for, in that the debt on the entire tract of land, the portion he retained and the portion he conveyed to Brown, is paid by Brown. There is no unjust enrichment of Mrs. Betts because she receives money in addition to the debt being paid. If Brown had paid the indebtedness as he promised to do, the bank could not have declared the entire amount due and applied the insurance proceeds to pay it.

It was error to sustain Brown's demurrer and to dismiss her claim.

■ The denial of Mrs. Betts' motion for summary judgment is not reviewable. Ga. L. 1959, pp. 234, 236; *Code Ann.* § 110-1208.

■ The foregoing consideration of and favorable conclusion as to the allegations made in the claim of Mrs. Betts is controlling adversely upon the claim of Brown. It was error to overrule Mrs. Betts' demurrer to Brown's claim and to grant his motion for summary judgment.

*Judgment affirmed in part; reversed in part. All the Justices concur.*