**Theta Fay Curry GODWIN, Individually and as Independent Executrix of the Estate of Alfred Elzy Godwin, Deceased, Appellant,**

v.

**Jesse PATE & Wife, Appellees.**

**No. 05-82-00189-CV.**

Court of Appeals of Texas, Dallas.

Dec. 13, 1983.

Rehearing Denied Jan. 24, 1984.

Peter L. Bargmann, Walden, Trice & Bargmann, Dallas, for appellant.

Gerry N. Wren, Brice & Barron, Dallas, for appellees.

Before CARVER, STEWART and SHUMPERT, JJ.

SHUMPERT, Justice.

This is an appeal from a summary judgment granting appellees specific performance and denying appellant's counterclaim. The principal question is whether payment of group life insurance proceeds to a creditor who owns the policy, to retire a debt, is payment by the insured debtor's estate, thereby entitling the estate to subrogation against a third party jointly and severally liable for the debt. We hold that it is not, and affirm the judgment.

On October 3, 1967, appellant Theta C. Godwin (Theta) and her husband, Alfred E. Godwin (Alfred) and appellees Jesse Pate and his wife Charlene, entered into a written agreement specifying the rights and obligations of the two couples with respect to their participation in the .purchase of some land in Denton County. On the same date, the two couples jointly executed a promissory note for $18,000.00 payable to Servis Employees Credit Union, of which

Alfred was a member, to finance a part of the purchase price of the property. The funds evidenced by the promissory note were paid to the sellers, and a warranty deed with vendor's lien naming Alfred and Theta as grantees and a deed of trust by Alfred and Theta to James M. Compton, trustee, for the benefit of the credit union were executed that same day.

Relevant sections of the written agreement between the couples provided:

(1) that each couple was to pay one-half of each semi-annual installment payment on the note to the credit union;

(2) that if Alfred died, the property was to be divided with eleven acres going to the Pates, provided that they made arrangement for the settlement of the debt against the eleven acres and obtained an approval of the transfer from the credit union, and the remaining acreage going to Alfred's estate;

(3) that the Pates would receive a designated eleven acres either upon Alfred's death or at the time the debt was retired;

(4) that when the land was divided, the Pates would bear the total expense in connection with the transfer, survey, etc.

Alfred and Mr. Pate each paid one-half of each of the payments due to the credit union from 1967 until Alfred's death in 1980. The note was never in default. During the period of the loan, the credit union paid premiums and maintained life insurance coverage on Alfred through its group life insurance policy with World Service Life Insurance Company. As a creditor, the credit union had an insurable interest in Alfred's life. *Burnett v. Amicable Life Ins. Co.*, 195 S.W.2d 237, 239 (Tex.Civ.App.—Eastland 1946, writ ref'd n.r.e.); *Williams v. Williams*, 262 S.W.2d 111, 113 (Tex.Civ.App.—Galveston 1953, no writ). Under the terms of the policy, the insurance company agreed to pay the credit union the amount remaining unpaid on the note on any balance up to $10,000.00 at the time of death of a member/debtor. When Alfred died, a balance of $8,701.60 remained due on the loan. The credit union filed a claim for that amount, was paid by the insurance company, and applied the funds to the loan balance, discharging the debt. The credit union then executed and recorded a release of its lien. On January 27, 1981, the credit union informed the Pates that the entire debt had been paid and that it had approved the transfer of eleven acres to them, pursuant to the agreement of October 3, 1967. The Pates then had the property surveyed at their expense and asked Theta to convey to them the eleven acres. She refused, alleging that the Pates still owed her $4,350.80, one-half of the loan balance on the date of Alfred's death. The Pates declined to pay and brought suit for specific performance. Theta counterclaimed for payment of the $4,350.80.

Theta contends the trial court erred because the summary judgment proof demonstrated as a matter of law that the Pates were not entitled to be credited with payment of the balance they owed because of the insurance company's payment of the debt. Theta argues: (1) the Pates were primary debtors for the amount due the credit union for the eleven acres; (2) Alfred and Theta were sureties of the Pates for that amount; (3) the group life insurance was collateral security for the debt; and (4) the payment of the debt with the insurance proceeds was payment by Alfred's estate which then became subrogated to the rights of the credit union. Subrogation is applicable when one person, acting involuntarily, has paid a debt for which another was primarily liable, unjustly enriching the latter. *Smart v. Tower Land and Investment Co.*, 597 S.W.2d 333, 337 (Tex.1980). Theta then argues that, before the Pates could get specific performance, Alfred's estate was entitled to receive the amount of money the Pates would have been obligated to pay the credit union but for the application of the life insurance proceeds to the debt.

The only Texas case addressing a similar question is *La-Rey, Inc. v. Kowalski*, 433

S.W.2d 530 (Tex.Civ.App.—San Antonio 1968, no writ), the holding of which Theta maintains should be dispositive in this case. In *Kowalski,* the court reviewed *Betts v. Brown,* 219 Ga. 782, 136 S.E.2d 365 (1964), in which the Georgia Supreme Court held that the payment of a debt with proceeds of a credit union life insurance policy was an involuntary payment by the insured resulting in a right of subrogation by the insured's estate against an assuming grantee. The Georgia court construed the credit life insurance provisions of the Georgia Insurance Code (the provisions of which are almost identical to those of the Texas Insurance Code) as evidencing an intent that the insured debtor had an interest in a credit life insurance contract and concluded that the "statute recognizes that it is the *debtor* who *furnishes* the insurance in credit transactions." (emphasis in original). *Betts,* 136 S.E.2d at 368.

In *Kowalski,* Kowalski purchased garage machinery and equipment by means of a promissory note which was assigned to a San Antonio bank. Included in the note was a premium for credit life insurance on Kowalski's life with the bank as credit beneficiary for the note balance, and Kowalski's estate as beneficiary for any excess. Kowalski sold his service station, together with the equipment, to La-Rey, Inc., which assumed and agreed to pay Kowalski's note to the bank. There was no reference to the credit life insurance policy in the agreement between La-Rey and Kowalski. No action was taken by the bank to relieve Kowalski of his primary obligation on the note. Subsequently, Kowalski died and the insurance company paid the bank the remaining indebtedness on the note. The San Antonio Court of Civil Appeals held, that as between Kowalski and La-Rey, when La-Rey assumed the indebtedness, it became the primary debtor and Kowalski became liable as a surety. The San Antonio court approved the *Betts* reasoning and concluded that, as between the creditor and the insured debtor, credit life insurance is collateral security, and that payment of the debt with credit life insurance is payment by the insured debtor. Kowalski's estate,

therefore, had discharged the indebtedness of Kowalski's principal and was consequently subrogated to the rights of the creditor bank.

The Pates cite *Miller v. Potter,* 210 N.C. 268, 186 S.E. 350 (1936), as dispositive. In *Miller,* a mortgage company loaned $3,000 to Nash and his wife and took a deed of trust on a house and lot to secure the loan. The Nashes conveyed the house and lot to Miller with Miller assuming and agreeing to pay the debt. The mortgage company then purchased a twelve-year reducing insurance policy in the sum of $3,000 on Miller's life, made itself the beneficiary, and paid the premiums. Miller conveyed to Hatcher who assumed the debt payment as had Miller. Hatcher conveyed to the Potters who similarly assumed payment of the debt. Miller then died and the insurance company paid the mortgage company on the insurance policy. The mortgage company marked the deed of trust paid and mentioned it to Mr. Potter who had it cancelled. Miller's heirs sued Potter (a) to recover the balance of the insurance proceeds over and above the indebtedness, (b) for subrogation to the rights of the creditor to that part of the insurance proceeds used in paying the indebtedness, and (c) to have the deed of trust restored and the cancellation of the record stricken out, to the end that Miller's estate should hold the deed of trust as a valid and subsisting lien against the house and lot.

Initially, all parties agreed that the balance of the insurance proceeds after the indebtedness had been paid should be recovered by Miller's heirs. The court then stated that Miller's estate had its debt paid by the application of the insurance proceeds to the debt secured by the deed of trust. Since neither Miller nor his estate paid it, however, the estate was not entitled to subrogation. By applying the insurance proceeds, the mortgage company released Miller's estate as well as Nash, Hatcher, and the Potters from any further liability without any of them having to pay any part of the debt.

This case is analogous to *Miller* and distinguishable from *Kowalski* and *Betts*. in *Kowalski*, subrogation was allowed, because the insured/debtor had paid the premiums on the policy and therefore had an ownership interest in it. His ownership of the policy, and the fact that any excess after the note was paid went to his estate, meant that he, and not the creditor, paid the debt, thereby entitling him to subrogation. In *Betts*, subrogation was allowed but it was not alleged who paid or agreed to pay the premiums on the insurance policies. In *Betts*, however, as in *Kowalski*, the insurance policies provided that any remaining balance after payment to the creditor was to be paid to the insured debtor's estate. This would indicate that the insured debtor in *Betts* had at least an interest in the policies, if not outright ownership of them.

It is undisputed here that the debt remaining when Alfred died was paid off by the insurance proceeds. It cannot be said, however, that Alfred or his estate paid the Pate's debt thereby entitling his estate and Theta to subrogation against the Pates. As in *Miller*, the proceeds were paid to the credit union by virtue of its position as policyholder, naming itself as beneficiary, rather than because of any action on the part of the insured debtor naming the credit union as beneficiary or assigning any rights he may have had under the policy to the credit union. It was the creditor's duty to apply the proceeds to the payment of the loan balance, and in doing so release Alfred's estate, as well as the Pates, from any further liability without either of them having to pay any of the remaining loan balance. The policy was for the amount of the remaining debt, so there was never a possibility of an excess to which Alfred's estate could have been entitled. Neither Theta nor Alfred's estate has demonstrated any ownership interest in the policy. Because neither of them, therefore, paid any debt of the Pates, neither is entitled to subrogation. Appellant's first ground of error is overruled.

In her second point of error, Theta contends that the trial court erred in overruling her motion for new trial based on newly discovered evidence. In order to require the granting of a new trial on the grounds of newly discovered evidence, *it is essential that the moving party introduce admissible, competent evidence at the hearing on the motion for new trial* showing (1) the existence of the newly discovered evidence; (2) that the moving party had no notice of the existence of such evidence prior to the time of trial; (3) that due diligence was exercised to procure the evidence prior to trial; (4) that the evidence is not merely cumulative and does not tend only to impeach; and (5) that the evidence would produce a different result if a new trial were granted. *Fettig v. Fettig*, 619 S.W.2d 262, 267 (Tex.Civ.App.—Tyler 1981, no writ); *Estate of Arrington v. Fields*, 578 S.W.2d 173, 180 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Jacobi v. Texas State Board of Medical Examiners*, 308 S.W.2d 261, 265 (Tex.Civ.App.—Waco 1957, writ ref'd n.r.e.). Furthermore, it is within the sound discretion of the trial judge to grant a new trial upon newly discovered evidence and unless an abuse of discretion is shown the decision will not be disturbed on appeal. *Wilkins v. Royal Indemnity Co.*, 592 S.W.2d 64, 69 (Tex.Civ.App.—Tyler 1979, no writ); *Estate of Arrington v. Fields*, 578 S.W.2d at 180; *Buhidar v. Abernathy*, 541 S.W.2d 648, 653 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

The new evidence upon which the motion for new trial is based must show that a different result would occur if a new trial were granted and the new evidence introduced. Theta now asserts the existence of a second promissory note payable to the credit union, discovered after the original trial, signed only by her and Alfred and not by the Pates, and claims it was the operative note.

Assuming, arguendo, that the second note was the operative one, Theta's claim for subrogation would still be defeated. Since she and Alfred would have been

**206**

entirely liable for the debt, the doctrine of subrogation, which requires involuntary payment of a third party's debt, would not be applicable, and the same result would be reached. *Smart v. Tower Land & Investment Co.,* 597 S.W.2d at 337. *McBroome-Bennett Plumbing, Inc. v. Villa France,* 515 S.W.2d 32 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.). On the record before us it cannot be said that the trial court abused its discretion in denying appellant's motion for new trial. Appellant's second point of error is overruled.

The judgment is affirmed.