**M.C. WALKER, Plaintiff–Appellant,**

v.

**OMAHA MUTUAL INDEMNITY COMPANY, Defendant–Appellee.**

**No. 87–8425**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 15, 1988.

C. Nathan Davis, Albany, Ga., for plaintiff-appellant.

Ben Kingree, Carter & Ansley, Atlanta, Ga., for defendant-appellee.

Before HILL, FAY and VANCE, Circuit Judges.

VANCE, Circuit Judge:

This case involves a narrow issue of Georgia law concerning whether an insured mortgagor has a legal interest in a credit disability insurance policy. Because the district court erroneously relied on vitiated Georgia case law, we reverse the district court's grant of summary judgment in favor of the insurer.

In 1974 appellant M.C. Walker purchased property in Albany, Georgia. Pursuant to the financing arrangement with Southwestern Mortgage Company, appellant became eligible for and received group mortgage disability insurance under a credit policy issued by Continental Casualty Company. Appellee Omaha Mutual Indemnity Company subsequently assumed appellant's policy.

In March, 1983 appellant was injured when a tree fell on his back. Because he became disabled and unable to work, appellant applied for benefits under the policy. Appellee made payments from April, 1983 to February, 1984, and then again from May, 1984 to August, 1984. Appellee made no further disability payments and as a result appellant was unable to make his mortgage payments. In November, 1984 appellant lost his house and property through foreclosure.

After removing appellant's subsequent state court action to federal district court, appellee moved for summary judgment on

the grounds that appellant had no interest in the policy to maintain an action, or, in the alternative, that appellant's action was barred as a result of his failure to submit certain disability reports. The district court, relying on *Murray v. Life Insurance Co. of Georgia*, 107 Ga.App. 545, 130 S.E.2d 767 (1963), granted summary judgment on the first ground.

In *Murray* the Court of Appeals of Georgia held that the purpose of a group creditors insurance policy was to provide the creditor mortgagee "with security for its outstanding loans by paying it the balance of indebtedness owed thereon in the event of the death or disability of the debtors." 130 S.E.2d at 769. The court concluded therefore that any cause of action on the policy was vested in the creditor, not the debtor. *Id.*

The new Georgia Insurance Code and subsequent case law quickly and drastically undermined the holding in *Murray*. In *Betts v. Brown*, 219 Ga. 782, 136 S.E.2d 365 (1964), the Georgia Supreme Court explained that the new insurance statutes, now Ga.Code Ann. § 33–31–7,[1] recognized and sought to "protect the interest of the insured debtor in the credit life insurance." 136 S.E.2d at 368.[2] In holding that an insured's widow's claim stated a cause of action against a third party who had agreed to assume the indebtedness, the court disapproved if not virtually overruled *Murray*. The court explained:

> The credit life insurance contract dealt with in *Murray v. Life Ins. Co. of Ga.*, 107 Ga.App. 545, 130 S.E.2d 767, was entered into prior to the effective date of the Georgia Insurance Code, Ga.L.1960, supra. Hence, what was there held as to the insured's lack of interest in that contract and consequent inability to sue the insurer for breach thereof was not with the aid of the above mentioned Insurance Code provisions, which recognize the interest of the insured in the credit life insurance contract.

*Id.* at 369.

One year later the Court of Appeals stated that *Murray* was not applicable to credit life insurance contracts entered into after the effective date of the new insurance code. *Pioneer Homeowners Life Ins. Co. v. Hogan*, 110 Ga.App. 887, 140 S.E.2d 212, 213 (1965) (citing *Betts*, 136 S.E.2d at 369). In *Hogan* the court specifically addressed the insurance company's contention that "a policy of credit life insurance is wholly for the benefit of the creditor beneficiary and the sole right of action to recover on such policy is therefore in the creditor beneficiary to the exclusion of the insured debtor...." 140 S.E.2d at 213. The court explicitly held: "This contention is without merit." *Id.; see also Robinson v. Volunteer State Life Ins. Co.*, 175 Ga.App. 292, 333 S.E.2d 171, 172 (1985) (credit insurance is by statute intended for benefit of debtor as well as creditor); *Knowles v. Knowles*, 125 Ga.App. 642, 188 S.E.2d 800, 804 (1972) ("payment of proceeds of credit life insurance inures to the benefit of the insured"); *Universal Am. Life Ins. Co. v. Finance Corp. of Am.*, 118 Ga.App. 160, 162 S.E.2d 813, 814 (1968) (1960 Credit Insurance Act of Georgia was enacted for the

---

1. Ga.Code Ann. § 33–31–7, enacted as part of the Georgia Insurance Code of 1960, provides in part:

    (a) All credit life insurance and credit accident and sickness insurance sold shall be evidenced by an individual policy or, in the case of group insurance, by a certificate of insurance, which individual policy or group certificate of insurance shall be delivered to the debtor.

    (b) Each individual policy or group certificate of credit life insurance and credit accident and sickness insurance, in addition to other requirements of law, shall set forth the name and home office address of the insurer; the identity by name or otherwise of the person or persons insured; the rate or amount of premium separately in connection with credit life insurance and credit accident and sickness insurance if an identifiable charge is made to the debtor; and a description of the coverage, including any exceptions, limitations, or restrictions; and it shall state that the benefits shall be paid to the creditor to reduce or extinguish the unpaid indebtedness and, wherever the amount of insurance may exceed the unpaid indebtedness, shall state that any excess shall be payable to a beneficiary, other than the creditor, named by the debtor or to his estate.

2. The court added that the same statute "recognizes that it is the *debtor* who *furnishes* the insurance in credit transactions." 136 S.E.2d at 368 (emphasis in original).

benefit of both insured borrower and creditor).

Appellee cites several Georgia cases in an effort to demonstrate that *Murray* is still a vibrant part of Georgia jurisprudence. While we agree with appellee that *Murray* continues to survive as support for certain propositions, the strong and disapproving language of *Betts* and *Hogan* compel us to conclude that in this case *Murray* is not controlling.

Appellee cites, for example, *Voyager Life & Health Ins. Co. v. Pulaski Banking Co.*, 181 Ga.App. 201, 351 S.E.2d 725 (1986), and *Sherrill v. Louisville Title Ins. Co.*, 134 Ga.App. 322, 214 S.E.2d 410 (1975), as support for its position. The court in *Voyager Life*, however, merely held that the plaintiff creditor bank had sufficient financial interest in a credit life insurance policy to maintain an action against a third party bank for indemnification, not that the debtor insured had no interest. *See* 351 S.E.2d at 727. In *Sherrill*, the court rejected the contention that the borrower could sue a title insurer on a mortgage title policy under a third party beneficiary theory. *See* 214 S.E.2d at 411. Because the Georgia legislature has placed insureds under credit insurance policies in a special category of protection, *see Betts*, 136 S.E.2d at 368, *Sherrill* is clearly distinguishable.[3]

The district court in this case relied exclusively on a principle which has been repudiated by the legislature and the courts of Georgia. The district court's grant of summary judgment on the basis of this principle was erroneous.[4]

REVERSED and REMANDED.

---

**3.** *First of Georgia Ins. Co. v. Augusta Ski Club*, 118 Ga.App. 731, 165 S.E.2d 476 (1968), also cited by appellee, is inapplicable to this case. The court in *Augusta Ski Club* relied on 1949 Georgia insurance statutes which were applicable to policies entered into before 1960. This case is governed by the Insurance Code of 1960.

**4.** There need not have been an appeal in this case. The attorneys for the plaintiff/appellant Walker have pointed out to this court that the *Murray* case has been superseded by later statute and case law. When the issue was pending

in the district court, however, Mr. Walker's attorneys did not provide the trial judge with the counseling to which he was entitled. They did not supply any of this information even though their opponent had cited *Murray* but had, even so, called attention to the fact that there had been a change in the statute since its decision. Presumably, had Mr. Walker's counsel given the district judge the benefit of good counseling, this appeal would have been unnecessary. That explains why, in this case, costs are assessed against the prevailing party.