TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00351-CV







Evelyn Dickey and Mona Zeller, Appellants (1)



v.



Healthcare Recoveries, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT

NO. 96-03256, HONORABLE F. SCOTT MCCOWN JUDGE PRESIDING 






 Appellants Evelyn Dickey and Mona Zeller brought suit against appellee Healthcare
Recoveries, Inc. ("HRI") alleging violations of the Texas Debt Collection Act (the "Act"). See Tex. Rev.
Civ. Stat. Ann. art. 5069-11.01 et seq. (2) This appeal arises from a summary judgment rendered in favor
of HRI and denying Dickey and Zeller's motion for partial summary judgment. Appellants bring two points
of error challenging the judgment of the district court on the rendering of both orders. We will affirm the
judgment of the district court.


BACKGROUND


 When reviewing a summary judgment, we take as true the evidence favorable to the non-movant, and in its favor resolve any doubt as well as indulge every reasonable inference. MMP, Ltd. v.
Jones, 710 S.W.2d 59, 60 (Tex. 1986). Viewed in this light, the summary judgment record shows the
following. HRI investigates and manages subrogation claims as the agent of health plans, health
maintenance organizations, and healthcare payors. In 1990, PCA Health Plans of Texas, Inc. ("PCA")
contracted with HRI to assert, settle and collect PCA's subrogation claims. In Fall 1994, Dickey and
Zeller were injured in separate and independent automobile accidents. Both received benefits from PCA
for medical treatment. Additionally, both made claims against third parties to recover for their injuries.

 Appellants' insurance policies with PCA expressly acknowledge that PCA is subrogated
to any recovery by the insured against a third-party to the extent that PCA has made medical payments to
the insured. In the course and scope of its business as an agent of PCA, HRI initiated contact with Dickey
and Zeller to investigate the nature of their medical claims and to determine if any third-party liability
existed. It is undisputed that at the time HRI initiated contact with appellants, neither Dickey nor Zeller had
settled her claims with the then alleged third-party tortfeasors. Once the possibility of third-party liability
had been established, HRI advised Dickey and Zeller of the subrogation clause in their respective insurance
policies. Upon learning that Dickey and Zeller were represented by counsel, HRI ceased contact with
appellants and made a direct request to counsel for collection from appellants' individual recoveries.
Counsel acknowledged PCA's subrogation interests and following settlement with the respective third-parties, forwarded payment of PCA's interests to HRI.

 At no time during its efforts to pursue PCA's interests regarding Dickey and Zeller did HRI
have a bond on file with the Secretary of State. Nor did HRI obtain a surety bond issued to a surety
company authorized to do business in this state as required by section 392.304(a)(5) of the Texas Finance
Code. In its contacts with Dickey, Zeller, and their counsel, HRI never identified itself as a debt collector
nor did its representative state that the information obtained would be used for the purpose of collecting
a debt. Subsequently, appellants brought suit alleging violations of the former Act contending that (1) HRI
failed to comply with the requirement that a "third-party debt collector" post a bond with the Secretary of
State and (2) HRI failed to identify itself as a "debt collector" when contacting Dickey and Zeller. See Tex.
Fin. Code Ann.§ 392.101, 392.304(a)(5) (West 1998). HRI moved for summary judgment on the ground
that it was not engaged in "debt collection" because it was not attempting to collect a "debt." Dickey and
Zeller countered with a motion for partial summary judgment alleging entitlement to judgment on the
aforementioned grounds of their petition for suit. The district court issued an order denying appellants'
motion and granting HRI's motion for summary judgment. It is from this judgment that Dickey and Zeller
appeal.


STANDARD OF REVIEW


 The question on appeal is not whether the summary-judgment proof raises a fact issue, but
whether the summary-judgment proof establishes as a matter of law that there is no genuine issue of
material fact as to one or more of the essential elements of plaintiff's cause of action. Gibbs v. General
Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970). The standards for reviewing summary judgment are
well established: (1) the movant for summary judgment has the burden of showing that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is
a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be
taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovant and any
doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.
1985). If a defendant conclusively negates one of the essential elements of the plaintiff's cause of action
as a matter of law, summary judgment is proper. Goldberg v. United States Shoe Corp., 775 S.W.2d
751, 752 (Tex.App.--Houston [1st Dist.] 1989, writ denied).

 The purpose of summary judgment is not to deprive litigants of their right to a full hearing
on the merits of any real issue of fact. Gulbenkian v. Penn, 252 S.W.2d 929, 931 (Tex. 1952). The
propriety of summary judgment is a question of law, and this Court reviews the trial court's decision de
novo. See Natividad v. Alexis, Inc., 875 S.W.2d 695, 699 (Tex. 1994). A defendant who moves for
summary judgment on the basis of a deficiency in the plaintiff's ground of recovery has the burden of
conclusively negating an element of the plaintiff's cause of action. See State v. $17,000, 809 S.W.2d 637,
640 (Tex. App.--Corpus Christi 1991, no writ).

DISCUSSION

The Nature of a Subrogation Claim 

 Dickey and Zeller first assert that the trial court erred in granting HRI's motion for summary
judgment on the ground that a subrogation interest is not a "debt" under Texas law. (3) The Texas Finance
Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family,
or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code Ann. §
392.001(2) (West 1998). What legally constitutes a debt under Texas law controls the issue of whether
HRI can be either a "third-party debt collector" or "debt collector" subject to the provisions of the Code. 
At the heart of HRI's motion and appellant's contention now before us is section 392.101 of the Code
which provides the following:


A third-party debt collector . . . may not engage in debt collection unless the third-party
debt collector . . . has obtained a surety bond issued by a surety company authorized to
do business in this state as prescribed by this section. A copy of the bond must be filed
with the secretary of state.



Tex. Fin. Code § 392.101(a). The Code adopts the federal definition of "debt collector," which describes
the term as:


Any person who uses any instrumentality of interstate commerce or the mails in any
business the principal purpose of which is the collection of any debts, or who regularly
collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be
owed or due another.



15 U.S.C.A. § 1692a(6) (1998). A "consumer" for purposes of the Finance Code is defined as "an
individual who has consumer debt." Tex. Fin. Code § 392.001(1). Appellants assert that HRI is a debt
collector because it attempted to solicit subrogation claims as debts for collection from consumers. We
disagree.

 Initially, we consider whether a subrogation claim is a debt as a matter of law. Texas
recognizes two types of subrogation, namely "conventional subrogation" and "legal subrogation." Dietrich
Indus., Inc. v. U. S., 988 F.2d 568, 570 (5th Cir.1993); Fleetwood v. Med. Center Bank, 786 S.W.2d
550, 554 (Tex. App.--Austin 1990, writ denied). Conventional subrogation depends on an agreement
between the parties. Id. Legal subrogation, also referred to as common-law or equitable subrogation
arises by operation of law or by implication in equity to prevent injustice. See id. For purposes of Texas
law, this latter type of subrogation has been defined as "a legal fiction by force of which an obligation,
extinguished by payment made by a third person, is treated as still subsisting for his benefit" or "the
procedure by which the equitable rights of one person are worked out through the legal rights of another." 
Texas Co. v. Miller, 165 F.2d 111, 115 (5th Cir. 1947); Interfirst Bank Dallas, N.A. v. U.S. Fidelity
& Guar. Co., 774 S.W.2d 391, 397 (Tex. App.--Dallas 1989, writ denied). Thus, under the laws of this
state, subrogation places one party in the place of another so that the new party gains the rights of the
former party regarding a claim. See, e.g., Hartford Cas. Ins. Co. v. Albertsons Grocery Stores, 931
S.W.2d 729, 733 (Tex. App.--Fort Worth 1996, no writ). Subrogation prevents double recovery by
insureds where the insurer has paid healthcare costs on behalf of the insured and the insured is seeking to
recover the amounts paid by the insurer in tort damages from a third party. McBroome-Bennett Plumbing
Inc. v. Villa France, Inc., 515 S.W.2d 32, 36-37 (Tex. Civ. App.--Dallas 1974, writ ref'd n.r.e.).

 PCA possesses conventional and legal subrogation rights with regard to appellants' claims
against third parties to the extent that PCA paid for appellants' medical treatment. PCA's conventional
rights to subrogation are specifically set forth in the contracts by which it provided insurance to appellants. 
PCA's legal subrogation rights exist by virtue of the insurer's payment of appellants' medical expenses
resulting from the acts of third-party tortfeasors. See Godwin v. Pate, 667 S.W.2d 201 (Tex.
App.--Dallas 1983, writ ref'd n.r.e.) (subrogation is applicable when one person, acting involuntarily, has
paid debt for which another is primarily liable, unjustly enriching the latter). A legal right to subrogation
arises when an insurance carrier, such as PCA, is subrogated to the rights of an injured insured at the time
the claim comes into existence.

 PCA's subrogation rights accrued at the time it made payments on appellants' behalf, and
any funds recovered by appellants in their tort actions against the third-party wrongdoers belong to PCA
until it has recovered the amount it paid on appellants' claims for medical treatment. Hence, we conclude
that the obligations in this cause arose as a result of torts committed by third parties and not as consumer
transactions and therefore, by definition, do not constitute consumer debt, as a matter of law. A tort claim
does not involve an obligation to pay money in exchange for money, property, insurance or services, as
does a consumer transaction which results in a consumer obligation to pay, i.e., a debt. Because we have
concluded that the obligations at issue in this cause are not the result of a consumer transaction, we also
conclude that HRI by its actions was not engaging in debt collection.

A Subrogation Interest is not a Consumer Transaction 

 We now turn to appellants' assertion that PCA's subrogation interest must be a "debt"
because it is incidental to a consumer transaction. The summary-judgment proof adduced by HRI and even
a portion of that adduced by appellants themselves demonstrates that appellants were not a party to any
consumer transaction with HRI. Section 5.10 of the PCA Group Contract/Certificate of Service provides
as follows:


5.10. Subrogation/Injuries Caused by Third Parties. Subrogation seeks to shift the
expense for injuries suffered by Members to those responsible for causing them. In return
for Health Plan providing benefits under this contract, each member agrees to assign to
Health Plan the right of recovery against any third party to the extent of benefits received
from or through Health Plan plus costs of suit and attorney's fees. At the time such
benefits are provided or thereafter as Health Plan may request, the Member agrees to:


* * *


B. Reimburse Health Plan for the reasonable value of any benefits and services provided
by Health Plan . . . . 



 If any consumer transaction occurred in this case, it was between PCA and appellants
(through their employers) and conceivably consisted of the payment of premiums by the employers for
healthcare coverage, and the provision of that coverage by PCA. The contract for insurance between PCA
and appellants clearly provided that the health plan had subrogation rights as an insurer. We note that the
agreement between HRI and PCA to provide subrogation and recovery services was entered into on
October 11, 1990, several years before any consumer transaction between appellants and PCA. It is thus
apparent that HRI was not involved in the consumer transactions that occurred between appellants and
PCA.

 Moreover, the record reveals that counsel for appellants acknowledged PCA's claim as
a subrogation claim rather than a debt. In counsel's correspondence to PCA, he stated that he
"recognize[d] [PCA's] subrogation interest" in Zeller's claim, and that his firm would "take all appropriate
measures to protect [PCA's] subrogation interest" in Dickey's claim. Accordingly, because the term
"consumer debt" does not encompass a subrogation interest, the provisions of the Finance Code do not
apply to this dispute. We, therefore, find no genuine issue of material fact and hold that Dickey and Zeller
were not entitled to partial summary judgment as a matter of law and that the trial court correctly granted
summary judgment in favor of HRI.


CONCLUSION

 The judgment of the district court is affirmed.



 

 Marilyn Aboussie, Justice

Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: January 23, 1998

Do Not Publish
1. We note that although appellants purport to bring this appeal both individually and on behalf of
all other parties similarly situated, no class action has been certified and filed in this cause.
2. When appellants initiated this lawsuit in 1996, the Act was found at Texas Revised Civil Statutes
article 5069-11.01 et seq. The cause of action is governed by the law in effect at that time. Because the
recodification of the statute and subsequent changes to it have no substantive impact on the issues relevant
to our analysis, we cite the current Code provisions for the sake of convenience. See Act of May 24,
1997, 75th Leg., R. S., ch. 1008, § 6(a), 1997 Tex. Gen. Laws 3561, 3601. 
3. For purposes of this appeal, we understand the term "debt" to refer to consumer debt. 



pellants' claims for medical treatment. Hence, we conclude
that the obligations in this cause arose as a result of torts committed by third parties and not as consumer
transactions and therefore, by definition, do not constitute consumer debt, as a matter of law. A tort claim
does not involve an obligation to pay money in exchange for money, property, insurance or services, as
does a consumer transaction which results in a consumer obligation to pay, i.e., a debt. Because we have
concluded that the obligations at issue in this cause are not the result of a consumer transaction, we also
conclude that HRI by its actions was not engaging in debt collection.

A Subrogation Interest is not a Consumer Transaction 

 We now turn to appellants' assertion that PCA's subrogation interest must be a "debt"
because it is incidental to a consumer transaction. The summary-judgment proof adduced by HRI and even
a portion of that adduced by appellants themselves demonstrates that appellants were not a party to any
consumer transaction with HRI. Section 5.10 of the PCA Group Contract/Certificate of Service provides
as follows:


5.10. Subrogation/Injuries Caused by Third Parties. Subrogation seeks to shift the
expense for injuries suffered by Members to those responsible for causing them. In return
for Health Plan providing benefits under this contract, each member agrees to assign to
Health Plan the right of recovery against any third party to the extent of benefits received
from or through Health Plan plus costs of suit and attorney's fees. At the time such
benefits are provided or thereafter as Health Plan may request, the Member agrees to:


* * *


B. Reimburse Health Plan for the reasonable value of any benefits and services provided
by Health Plan . . . . 



 If any consumer transaction occurred in this case, it was between PCA and appellants
(through their employers) and conceivably consisted of the payment of premiums by the employers for
healthcare coverage, and th